[No. 15888.  Department Two.  July 26, 1920.]

MARY A. CARTWRIGHT, *Formerly Mary A. Thompson,
et al., Appellants,* v. WILLIAM HAMILTON
*et al., Respondents.*[1]

BOUNDARIES (13) — LOCATION OF LINE — EVIDENCE — SUFFICIENCY.
In an action to establish a boundary line, the true line is not shown
to have been marked by an old division fence for twenty years,
where it appears that such fence was about thirty feet from the
quarter line and was but a continuation of a fence on one side of a
highway sixty feet wide, the center line of which was the quarter
line, and was not originally built as a dividing line, the other land
being unenclosed.

ADVERSE POSSESSION (13) — DIVISION FENCES — ACQUIESCENCE OF
ADVERSE PARTY — APPEAL — REVIEW.  In an action to establish a
boundary line, whether the defendants acquiesced in or treated any
part of their fence as marking the true dividing line between the
lands for the statutory period, is to be determined by the time
plaintiff enclosed the disputed tract using defendants' fence to
form a boundary thereof, and the time the controversy arose.

ADVERSE POSSESSION (13)—ACQUIESCENCE OF ADVERSE PARTY—
LIMITATIONS.  Acquiescence of the adverse party not being a con-
dition of the running of the statute of limitations, one in possession
of an enclosed tract of land is entitled to claim adverse possession
from the time the tract was first enclosed, down to the time the de-
fendant actually set back the fence.

APPEAL (418)—REVIEW—FINDINGS.  The findings of the trial
court on conflicting evidence will not be disturbed on appeal where
it is impossible to say that it preponderates against the conclusions
of the trial court.

Appeal from a judgment of the superior court for
Spokane county, Blake, J., entered October 4, 1919,
upon findings in favor of the defendants, in an action
to establish a boundary line, tried to the court.  Af-
firmed.

*Fred J. Cunningham,* for appellants.

*John L. Dirks,* for respondents.

[1]Reported in 191 Pac. 797.

FULLERTON, J.—The appellant Mary A. Cartwright owns the southwest quarter, and the respondents T. C. Hamilton and wife own the southeast quarter, of section thirty-two, in township twenty-three, north, of range forty-five, east of the Willamette Meridian. In March, 1919, the appellant, her husband joining with her as plaintiff, instituted an action in equity in the superior court of the county in which the lands lie, to establish the boundary line between the lands. In her complaint the appellant alleged that such boundary line had been marked by a fence for more than twenty years, up to and until some two years prior to the commencement of the action, when the same was unlawfully changed by the respondent T. C. Hamilton by erecting a new fence west of the original location at distances ranging from seventeen to thirty feet. She further alleged that the line of the old fence had been recognized and acquiesced in by respective owners as marking the boundary between the lands during the period of time mentioned, and that she and her predecessors in interest had been in the open, notorious and exclusive possession of such southwest quarter, and all of the land lying east of the same, if any, up to the fence, for more than twenty years, claiming the same adversely to all the world. That the respondent T. C. Hamilton had by his acts unlawfully ousted and ejected her from the land lying between the line of the old fence and the new fence erected by him, and had, since the erection of such fence, wrongfully and unlawfully withheld possession of the same from her. She further alleged that she and T. C. Hamilton, as adjoining proprietors of lands, could not agree as to the location of the true boundary line between the lands, and prayed that a boundary line between the lands be erected, established and properly marked; that com-

missioners be appointed for that purpose; that the land lying between the line of the old fence and the new fence be restored to her, and that she have such other and further relief as to the court may seem just.

The answer of the respondents admitted the ownership of the lands as alleged in the complaint, admitted that the parties were adjoining proprietors and could not agree upon the boundary line between the lands, and denied the other allegations of the complaint. The prayer of the answer was that the true and legal boundary line between the lands be adjudged and decreed by the court, and that the expense thereof be equitably apportioned between the parties.

After issue had been thus joined, the trial court appointed a deputy county surveyor as a commissioner to survey and mark the true boundary between the lands. This officer performed the service and made report of his survey to the court, filing therewith a plat and the field notes of the survey. This report shows that the commissioner began his survey on the south side of the section, where he found a galvanized iron pipe set in the ground to mark the corner, and which he found by measurements to be substantially equidistant from the established corners marking the southeast and southwest corners of the section. From this point he ran a right line to the quarter section corner on the north of the section, reporting that the newly erected fence substantially followed this line, and that the old fence, as nearly as he could ascertain its location, was, at the point of beginning, thirty-three feet east therefrom; at seven hundred and seventy-three feet, "on ridge," was twenty-nine and six-tenths feet east, and at eleven hundred and thirty feet, at the point of the intersection of the line with the Palouse highway, was twenty-eight and nine-tenths

feet east. From the point where the line left the highway named on the north, the fence dividing the lands of the parties was substantially upon the line run by the commissioner.

At the trial, following the report of the commissioner, it developed that the controversy between the parties was over the strip of land lying south of the Palouse highway and between the line of the old fence and the line as marked by the commissioner. There was no evidence seriously disputing the fact that the line as run by the commissioner marked the true dividing line; the appellant supporting her claim to the land by evidence tending to show that the old fence had been constructed as a line fence and that the line marked thereby had been acquiesced in, and that she had been in the adverse possession of the land lying west thereof for more than ten years, or more than the period of the statute of limitations. The trial court found against her on these contentions, and entered a decree to the effect that the true dividing line between the lands of the parties was the line as run by the commissioner, and that the appellant take nothing by her action in "virtue of her claim to any other boundary line running north and south between said properties upon the ground of adverse possession, use or acquiescence, or at all." It is from this judgment the present appeal is prosecuted.

The questions at issue as presented here are wholly questions of fact. On the question whether the old fence had been constructed as a line fence, the evidence, in our opinion, hardly leaves the matter in doubt. It appears that, at a time some thirty years or more prior to the trial of the cause, the county commissioners of the county in which the lands lie laid out a county road passing through the section of which the

lands of the respective parties form a part; that the road was sixty feet in width; that the center of the road followed the dividing line between these quarter sections from their common corner on the north in a southerly direction for approximately three-fourths of distance through the lands, from which point it passed southwesterly onto the quarter section now owned by the appellant, intersecting its south line some few rods west of the common corner on the south; that, when the respondent's predecessors in interest fenced the quarter section now owned by him, the fence was constructed on his side of this road from the north line down to the point where the road turned onto the appellant's land, and from thence in a straight line to the south boundary of the land. The reason why the fence when constructed did not follow the side of the road to the dividing line and continue from thence south on such line to the common corner, is stated by a witness as being due to an inadvertence on the part of the persons who constructed the fence. But, be this as may, the evidence as a whole makes it clear that the fence was constructed solely for the purpose of enclosing the quarter section now owned by respondents, not as a division line fence. In fact, when constructed it formed no part of the fence enclosing the appellant's lands; on her side of the road an independent fence was constructed, following the road for the entire distance through the land.

Whether the respondents acquiesced in or treated any part of their fence as marking the dividing line between the premises for the period of the statute of limitations, the evidence is not so clear. It appears that the county road, as originally laid out, left to the southeast thereof in the appellant's quarter section approximately three acres of land. The fences enclos-

ing the land, as originally constructed, left this tract open to the commons. Some years later, by agreement between the county commissioners and the appellant's predecessor in interest, the road was changed to a better grade, increasing the size of this tract to possibly twelve acres. Some time after the appellant purchased the quarter section, she enclosed this tract, using the fence of the respondent to form the east side of the enclosure. From this time on until the time the respondent set the fence back to the true line, the appellant made use of the entire enclosure, cultivating and raising crops on a part of it at times, and at times using it as pasture land. During this period there was no dispute between the parties as to the true line, or as to whether the fence was or was not on the true line. This dispute arose on the establishment of the Palouse highway, which varies from the original road and necessitated a new adjustment of the fences. Between the time the appellant began to make use of the fence and the time the controversy arose, the fence was kept in repair, seemingly at the mutual expense of the parties, and, during this period, it could well be found that the fence was recognized and acquiesced in as forming the boundary lines between the lands. The difficulty is in determining the time the appellant enclosed the tract. Her testimony is to the effect that it was more than ten years prior to the time any dispute arose over the boundary, while the respondent testifies that the time was less than that, saying that it was possibly seven or eight years. The supporting evidence, that is, the evidence of the disinterested witnesses, is also in conflict. These witnesses vary as much in their estimates of the times the land had been enclosed as do the principals, and we cannot say that there was any decided preponderance either way. Un-

der these circumstances, following our general rule, we are constrained to adopt that version of the evidence adopted by the trial court.

The remaining question, whether the appellant has title by adverse possession, is determined by the time she remained in the exclusive possession of the land. This possession began when she first enclosed the tract, and, since acquiescence of the adverse party is not a condition of the running of the statute of limitations, she is entitled to claim her possession as being adverse from that time down to the time the respondent actually set back the fence. But here again the evidence is conflicting, and we are not able to say that it preponderates against the conclusion of the trial court.

These conclusions require an affirmance of the decree of the trial court, and an affirmance is ordered.

HOLCOMB, C. J., MOUNT, TOLMAN, and BRIDGES, JJ., concur.